SQUIRE, etc., Plaintiff, v. GUARDIAN TRUST COMPANY, et, Defendants.

Common Pleas Court, Cuyahoga County.

No. 438880. Decided May 18, 1945.

208

**OPINION**

By McNAMEE, J:

The questions herein decided arise upon the conditional order of revivor, the answer thereto, and the objections of

the National City Bank, Executor of the Estate of Francis F. Prentiss, deceased, to the jurisdiction of this court, to determine whether the action stands revived.

Francis F. Prentiss was one of the original defendants in this action which was instituted December 30, 1935. He died April 5, 1937, and the National City Bank qualified as his executor on April 13, 1937. A conditional order of revivor was made on June 26th of that year and duly served upon the executor, who filed an answer, showing cause against revivor on July 28th, 1937. At the time this answer was filed, various motions attacking the form of plaintiff's original petition were pending before the court. Motions to separately state and number, and motions to make definite and certain were granted. Thereafter the court struck the amended, second amended, third amended, and fourth amended petitions from the files, because of plaintiff's alleged failure to comply with previous orders of the court. At the time the fourth amended petition was stricken, the court also dismissed the action. On February 16, 1944, the Court of Appeals reversed the action of the Common Pleas Court in striking the fourth amended petition and dismissingg the action and remanded the case for further proceedings according to law. An effort to secure a review of the appellate court's decision in the Supreme Court was unsuccessful: The cause is now pending in this court on motions directed against the fourth amended petition.

Although its counsel was served with copies of all pleadings filed by plaintiff, the executor did not participate in any of the above proceedings subsequent to the filing of its answer against revivor. In the brief attached to this answer, the following statement by counsel for the executor appeared:

"There is now pending a motion to separately state and number the numerous separate causes of action set forth in the petition, which motion has been assigned for oral argument in September. We respectfully suggest that the court should reserve its decision as to whether the Conditional Order should be made permanent **until after the motion to separately state and number has been decided** and an amended petition shall have been filed. It may then appear to the court that certain alleged causes of action should be revived and that others should not be."

It is disclosed by the record that the amended petition was not filed until more than a year after the executor's answer and brief containing the above quoted statement. Among the motions directed against the fourth amended petition which are presently pending are the applications of various defend-

ants requesting that this pleading further be separately stated and numbered.

The answer of the executor asserts but one cause against revivor viz:—that the petition does not set forth any cause of action which survives against the executor. In addition thereto the executor now claims, that more than a year having elapsed since the conditional order of revivor was made, by virtue of the provisions of §11410 GC, as that section existed prior to its amendment in August, 1941, the court is without power to find that the action stands revived. In support of this contention the executor relies upon the construction of R. S. 5157 (the predecessor section of §11410 GC) as found in Spaeth v. Sells, 176 Fed. 197. Sec. 11410 GC, as effective prior to August 1941, read as follows:

"Sec. 11410 GC. Limitation, when defendant dies.—

An order to revive an action against the representative or successor of a defendant shall not be made without the consent of such representative or successor, unless within one year from the time it first could have been made. (R. S. Sec. 5157)"

In construing the foregoing provisions, District Judge Sater of the Southern District of Ohio declared in the fourth paragraph of the syllabi in Spaeth v. Sells, supra that:

"Under Rev. St. Ohio, Sec. 5144, specifying the cases in which a cause of action survives the death of a party, section 5150, providing that a revivor may be effected by a conditional order, if the action be revived in the name of a representative of the party who died, and section 5157, providing that an order to revive an action against a representative of a defendant shall not be made without his consent unless within one year from the time it could have been first made, the conditional order being equivalent to a substitute for a notice of motion to show cause, the procuring of such an order is not a sufficient compliance with Section 5157, and the right of revivor is barred unless the final order of revivor is made within the time prescribed."

The executor claims that Spaeth v. Sells, supra, was cited, with approval, by the Supreme Court of Ohio in Porter v. Lerch, 129 Oh St at page 57. This is true, but the Supreme Court's approval is limited to the proposition that a conditional order may be obtained as a matter of right. The Supreme Court did not approve the proposition set forth in paragraph four of the syllabus of the federal case. The language of the Supreme Court is as follows:

"When properly invoked, the remedy of revivor provided by this section is a matter of right and not of discretion. Bates' Pleading, Practice, Parties & Forms (4 Ed.), 522, Section 579a; **Carter v. Jennings, 24 Oh St, 182;** Spaeth v. Sells, (C. C.) 176 F., 797."

With all due respect to the Federal District Court's decision, this Court is not persuaded that the reasoning which supports it is sound. The District Court's construction of §11410 GC cannot be reconciled with the language of that section, considered as it must be, with the cognate sections of the code.

At no place in any of the sections of the code in the chapter dealing with "Revivor of Actions" is the word "order" described as final or absolute. Nor are words of similar import used to modify it. The insertion in §11410 GC of such modifying terminology would be judicial legislation. It is a well established rule of statutory construction that the same meaning is intended for the same word or phrase when it is repeatedly used in the same or other statutes unless by giving effect to such rule an unreasonable result will follow.

**37 O. Jur. Sec. 308-309 GC, pages 571, et seq.**

By this test the word "order" in §11410 GC, has the same significance as it has in the preceding sections of the chapter on revivor where it appears. The legislature in §11403 GC used the term "conditional order", and thereafter in §§11404 GC,' 11405 GC and 11406 GC, it used the word "order" in referring to the conditional order mentioned in §11403 GC. There cannot be the slightest doubt as to legislative intent in this regard. The supposition that the legislature attached a different signification to the word "order" as it appears in §11410 GC is without logical justification.

The legislature provided two methods of reviving a dormant action. Under the terms of §11402 GC.:

"A revivor may be effected by the court, or a judge thereof in vacation, allowing a motion of the representative or successor in interest to become a party to the action, or by supplemental pleading alleging the death of the party, and naming his representative or successor in interest upon whom service may be made as in the commencement of an action. The limitations contained in subsequent sections of this chapter do not apply to this section. (R. S. Sec. 5149)." * * *

The second method of revivor is specified in §11403 GC which reads:

"Sec. 11403 GC. Revivor by conditional order.—A revivor also may be effected by a condition order of the court, if made

in term, or by a judge thereof, if in vacation, that the action be revived in the name of the representative or successor of the party who died, or whose powers ceased, and proceed in favor of or against him. (R. S. Sec. 5150).''

Sec. 11405 GC reads:

"Sec. 11405 GC. How order served.—If the order is made by consent of the parties, the action shall stand revived forthwith. When not made by consent, the order shall be served upon the party adverse to the party on whose motion it was made, in the same manner and returned within the same time, as a summons. If sufficient cause be not shown against the revivor, the action shall stand revived. (R. S. Sec. 5152.)''

Thus a revivor may be obtained, by the adverse party, by supplemental pleading, by a conditional order of revivor, or by an order made with consent. No statutory limitation of time applies when the action is revived by supplemental pleading or by consent. The limitation in §11410 GC applies only to an "order" made without consent.

An "order" made without consent, is, by virtue of the above quoted sections, conditional. The conclusion can not be avoided, therefore, that the limitation prescribed by §11410 GC, being restricted in its application, to an "order" made without consent, must refer and apply to a conditional order.

The foregoing analysis is supported by the decision and opinion in the case of **Carter v. Jennings, 24 Oh St, 182.** At page 187 of the opinion in that case, Judge Spear said:

"That chapter of the code provides for reviving the action, where the right of action survives, by a conditional order of the court, if made in term, or by a judge, if in vacation. The order is to be served in the mode prescribed, and if sufficient cause be not shown against the revivor, the action stands revived. The **order** cannot be made except by consent, unless within one year from the time it could have been first made." (Emphasis supplied.)

If there be any doubt that the word "order" in the above quotations means conditional order it will be dispelled quickly upon an examination of the following language on pages 188-189 of the opinion:

"The limiting the right of continuing an action against the representative of a party **to the year within which a conditional order may be made,** would evidently in many cases work

great inconvenience, and sometimes defeat the end of justice. In equity cases, the parties are often very numerous, many of them living remote from the place of litigation. If the failure to revive an action against the representatives of a necessary party **within the time allowed for a conditional order,** necessarily defeats the action, * * *." (Emphasis ours) (page 188) * * * "and **where the time has elapsed within which an action can be revived by a conditional order,** as provided for in title 13, chapter 1, of the code, the application for leave to continue the suit by supplemental pleading may be granted or refused, according to the nature and circumstances of the case." (page 189) (Emphasis ours.)

Thrice in the foregoing statements the Court refers to the time within which a conditional order may be made or allowed.

The first and third paragraphs of the syllabi of Carter v. Jennings, supra, reads:

"1. The right to revive an action, under title 13, chapter 1, of the code, is not dependent on the discretion of the court, or of the judge making the order, but under the conditions and within the time therein limited is a matter of right.'

"3. The court, in the exercise of this discretion, is governed by the equitable principle which requires reasonable diligence and good faith on the part of those invoking its action; and where the time has elapsed **within which an action can be revived by a conditional order,** as provided for in title 13, chapter 1, of the code, the application for leave to continue the suit by supplemental pleading, may be granted or refused, according to the nature and circumstances of the case." (Emphasis ours.)

Clearly the Supreme Court in the Jennings case contrary to the holding in Spaeth v. Sells, supra, was of the opinion that the provisions of the predecessor of §11410 **GC** prescribed a limitation upon the time within which a conditional order of revivor could be made.

If the legislature intended that a conditional order were to lapse at the expiration of one year, presumably, it would have so provided in clear and unambiguous terms. As heretofore noted the concluding sentence of §11405 **GC** reads:

"If sufficient cause be not shown against the revivor, the action shall stand revived."

This statement specifies the only condition subsequent, competent to defeat the effectiveness of a conditional order

of revivor. **Sec. 11410 GC** prescribes the time within which an "order" may be made. It makes no reference to the time within which a final order may be entered.

**Sec. 11645 GC** provides that a dormant judgment may be revived "in the manner prescribed for reviving actions before judgment". In construing this and other related sections, the Supreme Court in **Eshelman v. Van Nover, 89 Oh St page 48, at page 52** of the opinion, used the following significant language:

"As we view the statute under consideration, the conditional order of revivor relieves the judgment of its dormancy, subject to the right of the judgment debtor to show cause why it should not stand revived. The language used—'stand revived' is, we think, significant and refers to a judgment which has already been revived. Nothing further remains to be done on the part of the judgment creditor after the conditional order is made—the burden of setting aside the order being placed, by the provisions of the statute, upon the debtor. When the conditional order is granted, the judgment is then, upon a condition subsequent however, restored to all its former force and effect and is available to its owner as an original judgment."

In view of the foregoing, this Court holds that §11410 GC as effective prior to August, 1941, prescribed a limitation upon the time within which a conditional order might be made, without consent, and that said section was not effective to divest the court of jurisdiction to determine whether sufficient cause against revivor has been shown, after the expiration of one year from the time the conditional order was made.

Counsel on both sides devote much of their argument on the main question of survivorship, to a discussion with respect to whether the causes of action stated in the fourth amended petition are ex contractu or ex delicto. Admittedly if these causes are ex contractu, they are within the category of causes which survive at common law and are embraced within the terms of §11235 GC. If causes ex delicto are stated, it is necessary to determine whether they constitute "injuries to property" as defined by that section. The Court will confine itself to a consideration of the latter question and not undertake to determine in which of the above classifications the causes of action properly may be assigned. **Sec. 11235 GC** reads:

"**Sec. 11235 GC.** What causes of action survive.—In addition to the causes which survive at common law, causes of action

for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and the action may be brought notwithstanding the death of the person entitled or liable thereto. (R. S. Sec. 4975)."

In support of the claim that the causes of action stated, do not survive the executor relies upon **Wolf v. Wall, 40 Oh St 111.** That case was decided in 1883 by the Supreme Court commission. The opinion consists of a brief memorandum containing two short paragraphs. It contains no statement of facts and there is no syllabus. The first paragraph thereof reads:

"At common law an action for an injury to the person caused by the want of skill or negligence of a surgeon, although based on contract, did not survive the death of either party." (Citing cases.)

The second, and concluding paragraph reads:

"2. 'An injury to personal estate' under section 398, Civil Code (S & C Stat., 1058), is damage done to some specific property of which the person is the owner. It is not damage arising incidentally or collaterally."

The survivor statute in effect at the time the above case was decided provided for the survival of causes of action for mesne profits, injury to the estate, real or personal, fraud and deceit, in addition to causes which survive at common law. This section was amended after the decision in Wolf v. Wall, supra, to include "injuries to persons." The Wolf case, fairly, can be considered only as authority for the proposition that under the statute in effect at the time that case was decided, causes of action for "injuries to person" did not survive. The Wolf case supports defendants' position if the second paragraph of the opinion be considered as implying that damage to corporeal property only, is intended by the phrase "damage * * * to specific property", but to accept this as the true construction of the language used, would be a reversion to the artificial and unjust distinctions which plagued suitors under the discarded forms of common law procedure. Surely there is no less an injury to the real or personal estate by the loss, or diminution in values of intangible or incorporeal property caused by breach of duty, than by damage to corporeal property occasioned by like conduct. A person's estate suffers injury through loss of property rights, so called, as well as by direct damage to tangible property.

The word "property" is used in §11235 GC without limitation or qualification. Not only is this court required by §10214 GC to liberally construe that section but as early as 1835 our Supreme Court declared:

"That these statutes, being remedial in their nature, ought to be liberally construed, can hardly be denied. Indeed, it would be difficult to find a case in which a court would be better warranted in going beyond the strict letter of the law, and finding the legislative intent in its general purpose and spirit. The glaring injustice resulting from the maxim 'Actio personalis moritur cum persona,' led the English courts, centuries ago, to lay hold of every plausible pretext to limit and modify it." **Tracy v. Card 2 Oh St page 440.**

In **32 O. Jur., Section 2, page 604,** "property" is defined, as follows:

"The word 'property' is a generic term and has a most extensive signification; in its strict legal sense it means that dominion or indefinite right of use, enjoyment, and disposition which one may lawfully exercise over particular things or objects, animate or inanimate, without control or diminution, save only by the laws of the land."

In **Callen v. Electric Light Co., 66 Oh St, 166,** the Supreme Court in passing upon a question involving equitable easements made the following significant observations on the subject of property:

"And here we inquire what is meant by the word 'property'? If, as was once understood, and is still understood by some, it means only a corporeal thing, as a horse or a piece of land, then a negative answer to the question would seem to follow. If, however, the true meaning is the **right of property** in and dominion over the specific thing, then we would seem to be led to a different answer. That the latter meaning is the true one appears now to be the settled doctrine. Under this definition the word 'property' is held to denote certain **rights** in things which pertain to persons and which are created and sanctioned by law." (Emphasis ours.)

Again, on page **176** of the opinion is the following:

"As put by Shaw, C. J. in Railroad v. Plymouth, 14 Gray, 161: 'The word "property" in the tenth section of the bill of rights, which provides that whenever the public exigencies require

that the property of any individual shall be appropriated to public uses, he shall receive a reasonable compensation therefor, should have such a liberal construction as to include **every valuable interest which can be enjoyed as property and recognized as such.'** And that is the meaning intended by the previous adjudications of this court which have been cited, we think there can be no reasonable doubt." (Emphasis ours.)

Personal property, of course, includes intangible as well as tangible property:

"One of the well recognized definitions of personal property is that of property in possession, and property or choses in action." **32 O. Jur. Section 12, page 616. Cincinnati v. Hafer, 49 Oh St 60,** and **Anderson v. Durr, 100 Oh St 251.**

" 'Although popularly the term "personal property" is used in a somewhat restricted sense to include only goods and chattels, tangible things, the subjects of personal use, in its broad and general sense it includes everything which is the subject of ownership not coming under the denomination of real estate; and all subjects of property not of a freehold nature, nor descendable to the heirs at law, are personal property. The term has been held to include intangibles as well as tangibles. Shaw v. Shaw, 18 P. 2nd 189, 190, 136 Kan. 736."

In **Bank v. Telegraph Company, 79 Oh St, at page 98,** the Supreme Court said:

"It is now the general American doctrine that all causes of action arising from torts to property, real or personal,— injuries to the estate by which its value diminishes—survive and go to the executor or administrator as asset in his hands." 1 Cyc. 52.

The fourth amended petition alleges breaches of duties by defendants resulting in losses of money, which diminished the value of the assets of the bank.

In view of the foregoing, the Court holds that a suit by the Superintendent of Banks in behalf of the depositors, creditors, and stockholders, of an insolvent bank, against the former directors of such institution, which alleges breaches of duty by said directors resulting in losses to the bank and its creditors and stockholders, states causes of action for "injuries to property" within the purview of §11235 GC.

Being of the opinion that it has jurisdiction to determine

the issue raised, the Court further holds that sufficient cause against revivor has not been shown and that the action stands revived against the National City Bank, Executor of the Estate of Francis F. Prentiss, deceased.

\* \* \*

(Sections of the Code from §11397 to 11414 GC inclusive hereinabove referred to, are considered as they existed prior to the amendment of certain of said sections, effective August, 1941.)